UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CATHERINE V. MONROE,<br>*Plaintiff* | § § § | |
| VS. | § § | CIVIL ACTION NO. 3:19-cv-00162 |
| MEMORIAL HERMANN HEALTH SYSTEM<br>*Defendant* | § § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY DEMAND**

**I.
NATURE OF SUIT**

This suit is brought by **CATHERINE MONROE** against Defendant **MEMORIAL HERMANN HEALTH SYSTEM**, (hereinafter and sometimes referred to as Defendant "MEMORIAL HERMANN") for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") and the Rehabilitation Act.

**II.
PARTIES**

1. Plaintiff Catherine Monroe is an individual residing in Harris County, Texas.

2. Defendant Memorial Hermann Health System is the largest not-for-profit health system in southeast Texas.

3. Defendant MEMORIAL HERMANN HEALTH SYSTEM can be served with summons through its registered agent:

1

Ann Seymore
929 Gessner Road
Suite 2582
Houston, Texas 77024

### III.
### JURISDICTION

4. This is an action for monetary relief for the violation of the rights of the Plaintiff under the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C § 1395dd, and the Rehabilitation Act, 29 U.S.C. § 794. Accordingly, this Court has subject matter jurisdiction.

### IV.
### VENUE

5. Because this is a civil action arising under the laws of the United States, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Both the Plaintiff and the Defendant reside within the Southern District of Texas. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(1).

6. The business practices hereafter alleged to be unlawful were committed in the Southern District of Texas. Pursuant to 28 USC § 1391(b) and all other applicable laws, venue is proper in the Southern District of Texas, Galveston Division.

### V.
### FACTS

7. On or about May 8, 2017, the Plaintiff presented herself at the Memorial Hermann Katy Hospital Emergency Department, a hospital that is a part of the Memorial Hermann Healthcare System, complaining of serious flank pain and injury. The hospital is located at 23920 Katy Freeway, Katy, Texas 77494. Although awake, the Plaintiff was squirming,

kicking and wiggling due to severe pain. The Plaintiff's pain, located on the left flank, was rated a 10 out of a Pain Intensity NRS of 0-10. The pain was constant and sharp. The associated symptoms were nausea and vomiting. The Plaintiff reported that she had a kidney stone (5) years earlier. The Defendant conducted a CT-Scan without contrast of the Plaintiff's Abdomen/Pelvis. The CT-Scan revealed the following:

    i. Left-side obstructive uropathy with a 9X13X12 mm stone in the left proximal ureter;

    ii. Additional stones within both kidneys.

8. The Plaintiff was asked by the nurse on duty if she had driven herself to the E.R. and the Plaintiff replied in the affirmative. The Plaintiff's Medical Identification band was removed by the nurse and the Physician on duty entered the room. The Physician explained to the Plaintiff that the kidney stones had to be surgically removed due the size of the kidney stones, and that she had spoken with the surgeon that would perform the surgery. The Physician on duty further informed the Plaintiff that she could go home to clean herself up, inform her family members of the surgery, and thereafter the Plaintiff should contact the surgeon to schedule the procedure. Less than three (3) hours after admission, the Defendant alleged that the pain and nausea were under control, and discharged the Plaintiff with an anti-nausea medication, a pain medication and an antibiotic.

9. When the Plaintiff got home, she contacted the surgeon to schedule the procedure. The surgeon explained to the Plaintiff that he was not aware of her kidney stone surgery and that no one from the hospital had called him to inform him of the Plaintiff's kidney stone removal surgery. The surgeon then told the Plaintiff that she needed to have insurance in order for

him to perform the surgery. The pain grew increasingly worse with the medication, and Plaintiff's mother drove her to the Houston Methodist West Hospital Emergency Room seeking treatment on May 10, 2017. When the Plaintiff arrived at the Houston Methodist West Hospital Emergency Room, a nurse on duty asked the Plaintiff if the Physician at Memorial Hermann Katy Hospital had prescribed any medications. The Plaintiff told the nurse that she was prescribed an anti-nausea medication, pain medication, and an antibiotic. The nurse asked to see the medication. The nurse then informed the Plaintiff that the alleged antibiotic was not an antibiotic but was a medication used to dilate the urethra so she could pass the kidney stones, which would have been impossible due to the size of the kidney stones. Houston Methodist West Hospital performed kidney stone surgery immediately and removed the Plaintiff's kidney stones.

## VI.
## EMTALA STATUTORY FRAMEWORK

10. EMTALA states, inter alia, that any hospital that receives Medicare funds and operates an emergency department:

    i. must stabilize any individual determined to have an emergency medical condition, see 42 U.S.C.§ 1395dd(b); and

    ii. may not transfer (which includes discharge) any individual with an emergency medical condition who has not been stabilized, unless, inter alia, the individual requests a transfer or a physician certifies that the benefits of a transfer to another medical facility outweigh the increased risks to the patient, see id. § 1395dd(c).

11. EMTALA defines an emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of

the individual in serious jeopardy, [cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." Id. § 1395dd(e)(1)(A).

12. EMTALA defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" Id. § 1395dd(e)(3)(A).

13. Defendant receives Medicare/Medicaid funds and operates an emergency department and hence is subject to the requirements of EMTALA. The Plaintiff asserts that she was not stabilized during her ER visit to Memorial Hermann Katy Hospital, but was denied treatment because she had no health insurance.

## VII.
## REHABILITATION ACT STATUTORY FRAMEWORK

14. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits federally funded programs or activities from excluding, denying benefits to, or discriminating against, an "otherwise qualified individual with a disability in the United States . . . solely by reason of her or his disability[.]"

15. The Rehabilitation Act's implementing regulations further provide that "[a] [federal funds] recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant . . . unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 28 C.F.R. § 41.53.

16. An entity's failure to provide a reasonable accommodation to a disabled individual that the

individual needs in order to enjoy meaningful access to the entity's benefits and/or services constitutes discrimination under the Rehabilitation Act.

17. A disability includes "a physical or mental impairment that substantially limits one or more major life activities of [an] individual[.]" See 29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102(1)).

18. A major life activity includes, but is not limited to, the operation of reproductive functions, eating, sleeping, concentrating, and working. 29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102(2)).

19. Included in the Rehabilitation Act's definition of "program or activity" are "all of the operations of . . . an entire corporation . . . or other private organization . . . which is principally engaged in the business of providing . . . health care . . . ." 29 U.S.C. § 794(b)(3)(A)(ii).

20. At the time of application for services, the Plaintiff was suffering from severe pain, and was a "handicapped applicant" for medical services. Defendants are principally engaged in the business of providing health care and receive federal funds, and are therefore subject to § 504 of the Rehabilitation Act.

## VIII.
## FEDERAL CAUSES OF ACTION

**COUNT 1-** **Violation of 42 U.S.C. § 1395dd, Emergency Medical Treatment and Active Labor Act (EMTALA), (Declaratory and Injunctive Relief)**

21. The allegations contained in the preceding paragraphs are adopted by reference.

22. The Defendant's sole medical care of providing the Plaintiff medication did not stabilize the Plaintiff, and, in any case, the treatment provided to the Plaintiff did not stabilize the

Plaintiff.

23. The release of the Plaintiff from the Emergency Room without kidney stone surgery violates EMTALA.

**COUNT 2-    Violation of 29 U.S.C. § 794, Rehabilitation Act**

24. The allegations contained in the preceding paragraphs are adopted by reference.

25. The Plaintiff was handicapped by pain, and the Defendant discriminated against the Plaintiff in denying full emergency services she was otherwise required to receive in accordance with the standard of care, causing the Plaintiff severe harm.

## IX.
## REQUEST FOR RELIEF

26. Wherefore, Plaintiffs respectfully request that this Court:

   i. Assert jurisdiction over this matter;

   ii. Award Plaintiff the cost of this action, including reasonable attorney's fees;

   iii. Compensatory damages in the amount of $500,000 or as the law allows; and

   iv. Award such other reliefs as the Court deems just and appropriate.

## X.
## DEMAND FOR JURY TRIAL

Plaintiffs hereby formally make this demand for a jury trial in this cause pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted:

**OKON J. USORO, P.C.**

By: */s/ Okon J. Usoro*
Okon J. Usoro
SBN: 00789691
12000 Westheimer Rd., Ste. 300
Houston, Texas 77077
Tel: (281) 920-2000
Fax: (281) 920-213
ojusoro@birch.net
**ATTORNEY FOR PLAINTIFF**
**DATE: MAY 7, 2019**